UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREGORY LAMAR STEPHENS,

          Petitioner,

v.                                          Case No. 8:03-cv-997-T-24MAP

JAMES V. CROSBY, JR.,

          Respondent.

_____/

## O R D E R

This cause is before the Court on Petitioner Gregory L. Stephens' 28 U.S.C. § 2254 petition for writ of habeas corpus.   Stephens challenges his conviction and sentence entered  by the Circuit Court for the Twelfth Judicial Circuit, Sarasota, County, Florida.

### BACKGROUND

On April 11, 1996, Stephens was charged, by amended information, with one count of armed burglary of a structure (count one) and one count of possession of a firearm by a convicted felon (count two).  The amended information alleged that Stephens broke into a pawn shop owned and operated by the Sarasota County Sheriff's Office, "with the intent to commit an offense therein, and while inside, armed himself with a dangerous weapon, a .32 caliber firearm." The alleged offense occurred on January 24, 1996.

Stephens was tried by a jury on August 15-16, 1996, as to count one of the information, and was found guilty as charged.  On October 25, 1996, the court sentenced Stephens to life in prison as a habitual felony offender. Following sentencing, the trial court dismissed count two of the information.

Stephens appealed, raising three issues: 1) the state trial court erred in conducting an inadequate <u>Richardson</u> Hearing[1] and in failing to declare a mistrial based on the State's failure to provide the pawn shop's inventory list to the defense prior to trial; 2) Stephens should not have been charged with, and convicted of, armed burglary because he stole the unloaded gun during the burglary and, thus, the gun was not a dangerous weapon; and, 3) the state trial court erred in sentencing Stephens to life in prison because the state trial court judge did not know he had the discretion to sentence Stephens within the guidelines, rather than to a habitual felony offender sentence. (Apx. A, Ex. 1).

On July 12, 2000, the state district court of appeal per curiam affirmed Stephens' conviction, but remanded for reconsideration of the sentence, pursuant to <u>Smith v. State</u>, 761 So. 2d 419 (Fla. 2d DCA 2000), because the sentence was imposed under the 1995 guidelines, which were later found to violate the Florida Constitution's single-subject rule. <u>Stephens v. State</u>, 761 So. 2d 1240 (Fla. 2d DCA 2000). (Apx. A, Ex. 5).  A review of the Department of Corrections' database shows that Stephens is serving a life-sentence imposed on October 25, 1996.   Neither Stephens nor Respondent filed any documents to demonstrate that reconsideration of Stephens' sentence resulted in any change in the sentence.

On or about January 31, 2001, Stephens filed a state petition for writ of habeas corpus alleging that appellate counsel was ineffective for failing to raise the issue that the trial court erred in not giving a jury instruction on a lesser included offense of trespass.

---

[1] <u>Richardson v. State</u>, 246 So. 2d 771, 775 (Fla. 1971) (where a discovery violation is brought to the court's attention, before imposing sanctions, if any, the court should inquire into all of the surrounding circumstances covering at least such questions as whether the State's violation was inadvertent or willful, whether the violation was trivial or substantial, and what effect, if any, did it have upon the ability of the defendant to properly prepare for trial).

(Apx. A, Ex. 14).  On October 5, 2001, the state district court of appeal denied the petition.

Stephens v. State, 799 So.2d 1044 (Fla. 2d DCA 2001)[Table].

On March 27, 2001, Stephens filed a Rule 3.850 Motion, raising ten grounds for relief.  (Apx. B, Ex. 3, pp. 343-436).  On April 6, 2001, the state trial court denied grounds two, seven, eight, nine, and ten on the merits, and ordered the State to respond to grounds one, three, four, five, and six. (Apx. B, Ex. 2, pp. 280-287). As to the claims denied on their merits, the order stated:

> 2.    Defendant was denied the effective assistance of counsel by counsel's failure to investigate and depose a State witness.
>
> Defendant claims his attorney failed to investigate and depose State witness, detective Paul Richard, who testified that there was an inventory list that was kept from the pawnshop burglarized that matched the items found in the Defendant's possession.  The Defendant contends that, although the State admitted to a late disclosure of the items at trial during a *Richardson* hearing, that his attorney could have avoided the issue and used a different strategy if she had taken the witness's deposition and discovered the list.
>
> The Defendant's Motion is denied.  Although counsel apparently was not aware of the inventory list prior to trial, her objection at trial was sustained and the witness only made a brief statement about the list before the court ruled that the State would not be able to use the testimony at trial. (See attached copy of transcript, pp. 98-122).  As a result, the Defendant has not shown that he was prejudiced by counsel's failure to take the deposition of the witness such that the result of the proceeding would have been different. *See Strickland v. Washington*, 466 US 668 (1984).
>
> 7.    Defendant was denied the effective assistance of counsel by counsel's failure to present exculpatory evidence.
>
> Defendant contends that because the State failed to present testimony from the true owner of the building that housed the pawnshop that was the scene of the burglary, his attorney should have introduced testimony from the owner to contradict the testimony of the State.
>
> The Defendant's Motion is denied.  The Defendant's allegation is without merit because the testimony of State witness Richard established that the Sheriff's Office was renting the premises, and, therefore, a motion for

judgment of acquittal would have been denied as the Sheriff's Office had a superior interest than [sic] the Defendant in the premises.  (See attached transcript, pp. 91-93).  Further, any testimony by the owner of the building would actually have been harmful to the Defendant in that it would establish one of the elements of the crime of burglary.

8.   Defendant was denied the effective assistance of counsel by counsel's failure to object to prosecutorial misconduct in summation.

The Defendant points to four instances during summation that his attorney allegedly failed to object to improper and prejudicial statements by the State Attorney in summation.

The Defendant's Motion is denied.  The first instance of alleged improper argument is without merit as the prosecutor's argument is fair comment on the evidence.  (See attached transcript, p. 16).  *See Elam v. State*, 389 So.2d 221 (Fla. 1980).

With respect to the second statement, the court finds that the prosecutor was merely commenting on the evidence and not impermissibly interjecting his personal opinion in the case.  (See attached transcript, p. 23).

The third statement that Defendant complains about is another example of a fair comment on the evidence as the prosecutor is allowed to suggest inferences that may be drawn from the evidence presented.  (See attached transcript, pp. 21-22).  *See Lara v. State*, 528 So.2d 984, 985 (Fla. 3d DCA 1988)(Holding failure to object to misstatement of facts is not ineffective assistance of counsel).

Finally, the last statement complained about is another example of the prosecutor drawing a permissible inference from the videotape that was admitted as evidence at the trial.  (See attached transcript, p. 26).  Further, even if the comments above were objectionable, the Defendant would not be entitled to relief because the comments would not have been deemed so prejudicial as to require a new trial.

9.   Defendant was denied the effective assistance of counsel by counsel's failure to object and preserve a sentencing error.

The Defendant contends his attorney failed to object and preserve for appellate review an error made by the preparer of the presentence investigation report.  The Defendant contends that his attorney knew about the error before sentencing, but failed to contact the preparer to correct the error in the report prior to sentencing.

The Defendant's Motion is denied. The transcript refutes the Defendant's claim that his attorney did object to the statement in the report and his claim is also insufficient in that there is nothing to indicate that the court sentenced the Defendant based on the error. (See attached transcript, pp. 18, 35-36).

10.   The Defendant's sentence is illegal.

The Defendant contends his sentence is illegal because the Florida Supreme Court in *State v. Thompson*, 760 So.2d 643 (Fla. 1999) declared section 775.084(3)(a)6, Florida Statutes unconstitutional.

The Defendant's Motion is denied. *Thompson* does not apply to the Defendant because the Defendant was not sentenced as a violent career criminal or habitual violent felony offender. *See Thompson*, 760 So.2d at 649. (See attached sentence).

On May 3, 2001, the court entered an amended order pursuant to Stephens' motion for rehearing, correcting omissions in the original order. (Apx. A., Ex. 6;  Apx. B, Ex. 2, pp. 276-279).   The omissions were related to attachments of the record.

The State filed its response to grounds one, three, four, five and six of the Rule 3.850 motion on September 18, 2001.  (Apx. B, Ex. 2, pp. 336-339).  On October 3, 2001, the state trial court denied grounds three, four, five, and six and granted an evidentiary hearing on the claim in ground one alleging that trial counsel was ineffective for failing to object to testimony given by Deputy Walsh concerning Walsh's identification of Stephens from videotape surveillance pictures taken at the time of the burglary.

As to the claims that were denied on their merits after considering. the record and the State's response, the state trial court made the following findings of fact and conclusions of law:

3.      <u>Defendant was denied the effective assistance of counsel by counsel's failure to use a defense</u>.

The Defendant contends that his attorney failed to use misidentification as a defense to the charge in view of the poor clarity and quality of the State's videotape evidence.  The Defendant points to a discrepancy in the color of the burglary suspect's shoes and the shoes he was wearing on the day he was arrested as well as a difference in the color of the sweatshirt he was wearing from the image on the videotape.

The State argued that the Defendant's claim should be denied because the videotape was in black and white and it was impossible to tell color in the videotape.  Further, the State argued that Deputy Walsh testified that the Defendant's sweatshirt was red in color and that the Defendant never testified as to the color of his shoes.

The Defendant's Motion is denied.  The State's response establishes that counsel's failure to object to the discrepancy in the videotape and the color of his sweatshirt and shoes was not unreasonable in light of the black and white nature of the videotape.  (See videotape admitted as evidence at trial, exhibit number 8).  Further, Deputy Walsh testified that the sweatshirt the Defendant was wearing was red.  (See attached transcript, pp. 78-79).  Further, the Defendant did not raise the issue of the color of his shoes in his own testimony.  (See attached transcript, pp. 148-152).  Therefore, it would have been impossible to argue the alleged discrepancy in the color of the shoes and sweatshirt.

4.      <u>Defendant was denied the effective assistance of counsel by counsel's failure to present exculpatory evidence</u>.

In a corollary to ground three, the Defendant contends his attorney failed to present evidence of the color of Defendant's shoes when arrested, which the Defendant contends was inconsistent with the color of the suspected burglar's shoes as depicted on the videotape.

Based upon the reasons given in ground four above, the Defendant's Motion is denied.

5.      <u>Defendant was denied the effective assistance of counsel by counsel's failure to file a motion to suppress or in limine</u>.

Defendant contends his attorney should have filed a motion to suppress or in limine to exclude the evidence of the surveillance videotape from the jury due to its poor quality and lack of authentication as well as lack of chain of custody.

The State argued that the Defendant's claim should be denied because the trial testimony established that a sufficient predicate was laid for the introduction of the videotape and that any imperfections in the quality of the videotape would go to the weight of the testimony and not its admissibility.

The Defendant's Motion is denied.  As the transcript of the testimony shows, a sufficient predicate was laid for the introduction of the videotape as well as a chain of custody for its admission into evidence.  (See attached transcript, pp. 127-30).  Further, any imperfections or poor clarity of the tape would go to the weight and not the admissibility of the evidence.  *See State v. Lewis*, 543 So.2d 760, 767 (Fla. 2d DCA 1989).  *See also Crews v. State*, 442 So.2d 432 (Fla. 5th DCA 1983).  As a result, counsel's alleged failure to object did not prejudice the Defendant such that the outcome of the proceeding would have been different.

6.     Defendant was denied the effective assistance of counsel by counsel's failure to object to testimony.

In a corollary to ground five, the Defendant contends that his attorney was ineffective by her failure to object to the admission of the surveillance videotape that was introduced by the state on the grounds that the State failed to lay the proper predicate for the videotape.

The Defendant's claim is denied for the reasons given under ground six [sic][2] of this order.

(Apx. B, Ex. 4, pp. 484-486).

Following the April 24, 2002, evidentiary hearing,  (Apx. B, Ex. 1, pp. 1-57), the state trial court entered a detailed order denying ground one of the post-conviction motion.  (Apx. A, Ex. 7; Apx. B, Ex. 4, pp. 548-556).  The state trial court found that trial counsel's failure to object to the testimony of the deputy identifying Stephens on the videotape was a reasonable tactical decision and, even if counsel's omission were error, there was no prejudice to Stephens in light of the compelling evidence at trial showing that Stephens was the individual who committed the offense. The state trial court correctly analyzed this claim

---

[2] It appears this should state ground five.

under the standard for determining ineffective assistance of counsel found in <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668 (1984).  The state trial court's order reads, in part:

> It is clear that the state's case regarding identification of the accused rests on a compelling chain of circumstances, not on Walsh's brief answers to the cited questions.  These facts include defendant's stop within mere minutes of the pawn shop alarm sounding, his presence alone in a car a short distance from the scene of the burglary, his fresh possession of items traceable to the pawn shop by identifying tags, his bleeding hand consistent with a glass door smash and grab, and his wearing of a red sweatshirt and other distinctive clothing consistent with the clothing worn by the video taped intruder.  While the state made reference to defendant's facial features, body type and size to the extent they are distinguishable on the tape or the photos made from the tape, its case rested on other compelling and independent facts which by themselves are sufficient to convict.

> Had defense attorney made an objection to the prosecutor's question, or moved to strike Walsh's response to her question, and the motions [been] granted, the court has a high level of confidence the verdict would have been the same given the quality and quantity of the state's evidence.  This is not a close case, where for example, one identification witnesses' answers, if improper, had a likelihood of changing the jury's verdict.  Identification of the defendant as the perpetrator was more than amply supported by the considerable weight of other evidence, and the lawyer's performance in regard to Walsh's answers cannot be considered as being a contributing factor in defendant's conviction.

> To develop her defense, Ms. McCurry felt she had to attack the witnesses for incompetent police work.  At the same time, she had to assume the risk that a witness might answer in a way not helpful to the defense.  Defense counsel most likely knew what Walsh was going to say in defense of the incompetent police work charge before she asked the question.  From her perspective, there was no reason to object to Walsh's oblique reference on direct, since she knew she had to broach the subject on cross in any event.

> This is the type of risk-benefit analysis defense attorneys must make every day in trials.  The attorney's choice was to abandon a line of questioning that might raise a reasonable doubt with some juries, or live with the fact that the witness might explain his alleged incompetence in a way that might further implicate her client as the perpetrator.  Counsel chose the latter, and in the face of the other identification evidence it was a reasonable decision to make.  In short, given the cards she was dealt, Stephen's trial counsel played the best hand possible.  She did not fall below the <u>Strickland</u>

standard by employing a legitimate trial strategy, regardless of the result for
her client.

(Apx. A, Ex. 7; Apx. B., Ex. 4, pp. 553-554).

Stephens appealed, and the state district court of appeal per curiam affirmed in
Case Number 2D02-2729 on February 14, 2003. Stephens v. State, 846 So. 2d 520 (Fla.
2d DCA 2003). (Apx. A, Ex. 11).

On June 10, 2003, Stephens timely filed the present federal petition for writ of
habeas corpus raising four grounds for relief:  1) the state trial court violated Stephens' Fifth
and Fourteenth Amendment rights by conducting an inadequate Richardson Hearing; 2)
the state trial court and the state district court of appeal violated Stephens' Fourteenth
Amendment rights by sentencing Stephens to a life sentence because the state trial court
judge did not know he had the discretion to sentence Stephens within the guidelines, rather
than as an habitual felony offender without making written findings; 3) a) the state trial court
erred in failing to give a requested instruction on trespass; b)  appellate counsel was
ineffective for failing  to raise the jury-instruction question on direct appeal; 4) the state trial
court and state district court of appeal violated Stephens' Fifth, Sixth, and Fourteenth
Amendment rights in denying Grounds one, two, three, four, seven, eight, and ten of
Stephens' Rule 3.850 motion.

STANDARDS OF REVIEW

Because Stephens filed his petition after April 24, 1996, this case is governed by 28
U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d
880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345,

1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of

state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order

to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell

v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating

state-court ruling is highly deferential, which demands that state-court decisions be given

benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this

Petition.

### A.

A § 2254 application cannot be granted unless a petitioner "has exhausted the

remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); Snowden v.

Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must

give the state courts an opportunity to act on his claims before he presents those claims

to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal

habeas relief cannot raise a federal constitutional claim in federal court unless he first

properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313

(11th Cir. 2001)); Snowden v. Singletary, 135 F.3d at 735 ("Exhaustion of state remedies

requires that the state prisoner fairly presen[t] federal claims to the state courts in order to

give the State the opportunity to pass upon and correct alleged violations of its prisoners'

federal rights") (quoting Duncan v. Henry,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue

discretionary appellate review.  "'[S]tate prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845).   This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  Smith v. Jones, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891(quoting Judd v. Haley, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.   First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice," Stephens must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial

-11-

disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982). Stephens must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The <u>Schlup</u> Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  <u>Schlup</u> 513 U.S. at 324.   This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." <u>Ward v. Cain</u>, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

<u>No Presumption that State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. <u>See Coleman</u>, 501 U.S. 722,  735-36 (1991);  <u>Kight v. Singletary</u>, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); <u>Tower v. Phillips</u>, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**B.**

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state

court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply.  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.  Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

## C.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). <u>Williams v. Taylor</u>, 529 U.S. at 433-34.

## D.

### Ineffective Assistance of Counsel Claims

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 687-88; <u>see also</u>, <u>Wiggins v. Smith</u>, 123 S.Ct. 2527 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690).  This judicial scrutiny is "highly deferential." <u>Id.</u> at 477.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689-90; <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002).  Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, <u>Thompson v. Haley</u>, 255 F.3d 1292, 1297 (11th Cir. 2001); <u>Meeks v. Moore</u>, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness

contained in § 2254(e)(1) does not apply to this determination.  Parker v. Head, 244 F.3d at 835-837.  "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims."  Williams, 529 U.S. at 391.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled. ' " Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.), cert. denied, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. See Chandler, 218 F.3d at 1315. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  Chandler, 218 F.3d, at 1314 n. 15.

**E.**

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue

were raised only as a state law claim in state court. Anderson v. Harless, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in Chapman v. California, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637. Although no constitutional error has occurred in Stephens's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Stephens' petition must be **DENIED**.

### Ground One

Stephens contends that the state trial court violated his Fifth and Fourteenth Amendment rights by conducting an inadequate Richardson Hearing. This claim has no merit for at least two reasons. First, Stephens did not raise the issue as a constitutional violation on direct appeal and, therefore, he did not exhaust his state court remedies.

Stephens raised the following issue on direct appeal of his conviction:

THE TRIAL COURT ERRED BY CONDUCTING AN INADEQUATE
RICHARDSON HEARING AND BY FAILING TO DECLARE A MISTRIAL
BASED ON THE STATE'S FAILURE TO PROVIDE THE PAWN SHOP'S

INVENTORY LIST TO THE DEFENSE PRIOR TO TRIAL. (Apx. A, Ex. 1, p. 12).

Other than citing the United States Supreme Court's ruling in Brady  v. Maryland, 373 U.S. 83 (1963), wherein the Court stated the withholding of *exculpatory* evidence is a violation of due process, Stephens cited no federal law or constitutional right that was violated by the state trial court's alleged failure to conduct an appropriate Richardson hearing.  Brady is inapplicable to this case because other than stating in a footnote that some of the information on this list "might have been exculpatory" (Apx. A, Ex. 1, p. 23, n. 15), Stephens made no substantive argument that the state violated the edict of Brady, or Stephens' due process rights, with regard to exculpatory evidence.

Furthermore, Stephens' direct appeal almost exclusively addressed the alleged procedural prejudice Stephens suffered as a result of the non-disclosure, rather than any substantive prejudice, or unfair effect the non-disclosure may have had on the jury or the jury's verdict.  In fact, in his appellate brief, Stephens points out that procedural prejudice deals with whether the *non-disclosure* of evidence affected the defendant's pre-trial preparation and strategy, not whether the *introduction* of the evidence had an effect on the jury or the verdict.  (Apx. A, Ex. 1, pp. 12-25).

Because Stephens' alleged Constitutional violations were not raised in the state court, they are unexhausted and cannot be raised for the first time in this federal habeas corpus petition.

 Second, the manner in which a state trial court conducts a Richardson hearing is a matter of state law and not cognizable in a writ of habeas corpus unless the hearing rendered the trial fundamentally unfair.

Federal courts do not review state discovery violations unless the violation constitutes a denial of fundamental fairness.  Flowers v. Wainwright, 738 F. 2d 203, 293 (11th Cir. 1986) (citing, Carrizales v. Wainwright, 669 F. 2d 1053 (11th Cir. 1983), and Davis v. Wainwright, 547 F. 2d 261 (5th Cir. 1977)). See Machin v. Wainwright, 758 F. 2d 1431 (11th Cir. 1985); Florida Rule of Criminal Procedure 3.220.  Federal courts are bound by a state court's interpretation of its own rules of evidence and procedure.  758 F. 2d at 1433.  Admission of prejudicial evidence may support habeas corpus relief only where the evidence is "material in the sense of a crucial, critical, highly significant factor." Id., (quoting Osborne v. Wainwright, 720 F. 2d 1237, 1238-39 (11th Cir. 1983)).  In Machin, the Eleventh Circuit found that the "surprise" disclosure did not rise to the level of a constitutional due process violation. 758 F.2d at 1433, 1434.  Likewise, in the present case, there was no constitutional due process violation.

Ground One does not warrant habeas corpus relief.

### Ground Two

Stephens contends that the state trial court and the state district court of appeal erred in violating his Fourteenth Amendment rights by sentencing him to a life sentence because the state trial court judge did not know he had the discretion to sentence Stephens within the guidelines, rather than to an habitual felony offender sentence.  In support, Stephens alleges:

> During sentencing hearing, defense counsel, assistant state attorney and the judge was [sic] confused as to the standard sentencing.  The judge read directly from the amended section of 775.084(3)(a)6.  The judge wasn't sure he had the discretion not to sentence the Petitioner to a life sentence as an habitual felony offender.  During the process of sentencing the judge stated that he did not want to sentence the Petitioner to a life sentence, and

that he thought a life sentence is a very harsh sentence in this case, but he was required by law to do so.

During Petitioner's appellate review, appellate counsel argued that the lower court sentenced Petitioner to the amended section 775.084(3)(a)6. Upon the "Gort Act" in Chapter 95-182 session laws of Florida. This amended section was later held to be unconstitutional [sic] enacted because it violated the single subject rule.

Subsequently the appellate court filed an opinion stating, "However, because the offense occurred on Jan. 24, 1996, and appellant's sentence was imposed pursuant to the 1995 sentencing guidelines/we remand this case to the trial court for reconsideration of his sentence." The Petitioner's sentence was remanded back to the lower court, but for the wrong reason. The Petitioner's claim, which appellate counsel argued was based on the lower court discretion whether to sentence the Petitioner as an habitual felony offender, or to his guidelines, and the Petitioner being sentenced to the amended section of 775.084(3)(A)6, which was later held to be unconstitutional by the Florida supreme court.

In [sic] the appellate court's opinion does not address Petitioner's claim on its merits as to the Petitioner's sentence. The Petitioner's due process amendments [sic] has been violated upon his sentencing process. The Petitioner request that he be remanded back to the lower court for a fair sentencing process.

This claim also has no merit. On direct appeal from his conviction and sentence, Stephens claimed his sentence was illegal because the state trial judge was confused as to whether he could sentence Stephens to a guidelines sentence rather than a life sentence without written findings that Stephens was not a danger to society. Stephens did not cite any Federal or Constitutional law in support of his argument on appeal. (Apx. A, Ex. 1, pp. 30-39).

In fact, Stephens was sentenced under § 775.084(3)(a), Fla. Stat. (1995), which defines criteria for imposing habitual felony offender sentences. According to the statute, where an individual meets the statutory criteria, the state trial court judge must impose a

habitual felony offender sentence unless the state trial court judge makes written findings that the sentence is unnecessary for the protection of the public.

Any determination made with regard to Florida law regarding sentencing is purely a matter of state law and not reviewable in a federal writ of habeas corpus.  <u>Branan v. Booth</u>, 861 F. 2d 1507, 1508 (11th Cir. 1988); <u>Willeford v. Estelle</u>, 538 F. 2d 1194, 1196 (5th Cir. 1976).

Ground Two does not warrant habeas corpus relief.

Ground Three

Stephens claims the state trial court and his appellate counsel violated his Fifth, Six, and Fourteen Amendment rights because the trial court failed to give the requested lesser included jury instruction on trespassing and appellate counsel failed to present this "fundamental error" on direct appeal.

In support, Stephens alleges:

> During Petitioner's trial, defense counsel requested to the court to give the jury instruction of trespass.  There are several supporting evidence [sic] during trial, which provide that this lesser included instruction of trespass be given to the jury. (Trial transcripts Vol.: 2, pg. 171)  Thus, by the trial court refusing to give this instruction to the jury, deprived the jury of its pardon power.

> By the appellate counsel not presenting this fundamental error on direct review deprived Petitioner of his Sixth Amendment right.  The Petitioner contends that jurors are finders of fact.  They should and do have a wide latitude in finding of facts.  Even if the evidence is overwhelming, the jury should not be deprived of its pardon power.  Thus, the Petitioner's case should be remanded back to the lower court, granting a new trial.

**Failure to Give Requested Jury Instruction of Trespass**

Stephens' allegation the trial court erred in failing to give a requested jury instruction of trespass does not raise any issue of federal or constitutional law and is not reviewable in this federal petition for writ of habeas corpus.  Defective or improper jury instructions raise issues of constitutional dimension only if the entire trial was rendered fundamentally unfair by the alleged jury instruction error.  Carrizales v. Wainwright, 699 So. 2d 1053, 1055 (11th Cir. 1983).

In order to determine if the state trial court's refusal to instruct the jury as to trespass rendered Stephens' trial fundamentally unfair, an examination of the evidence produced at Stephens' trial is necessary.

In 1995 and 1996, Sarasota Detective Paul Richard took part in a special investigation in which the Sarasota Sheriff's Office set up an undercover "storefront operation," posing as a real pawn shop to interrupt criminal activities, namely persons selling stolen property to pawn shops.  The fictitious shop was operated from October 4, 1995, until about April 6, 1996, and was known as Suncoast Liquidators.  It was located in a strip mall at 2332 17th Street in Sarasota.  The shop was stocked with unclaimed property confiscated by the sheriff's departments of Sarasota and Manatee counties.

On the morning of January 23, 1996, Detective Richard checked the time and date on the video recorder to make sure it was accurate.  Detective Richard then watched every transaction made that day by Officers Shingledecker and Wortman.  At 8:00 p.m., after the store closed, the video recorder automatically began recording, taking a photo every second.

On January 24, 1996, at 2:20 a.m., the videotape in the pawn shop captured the image of car headlights pulling up outside the business.  After waiting for a moment, Stephens approached the front glass door of the business.  He was wearing a heavy coat with a hood pulled up in an attempt to disguise his face.  He heaved a large rock through the glass front door.  Stephens then plunged himself through the broken door into the shop. He held a cloth in his hands to prevent leaving fingerprints.  He picked up two CD players. He smashed a display case and retrieved a gun.  He carried all the stolen items out of the store.

Since the identity of Stephens as the perpetrator captured on the videotape was an issue at trial, the following points of identification are important.   When Stephens was stopped five minutes after the crime, Stephens was wearing a sweatshirt with a hood on it, as was the perpetrator in the video.  The collar and hood of Stephens' jacket matched the collar and hood of the jacket in the video.  Both Stephens' jacket and the jacket in the video bore an emblem on the left side, as well as a detachable inner vest.  Both Stephens' jacket and the jacket in the video had sweat bands attached to the wrist.  Both Stephens and the perpetrator in the video had a large nose, angular face, and were African-American.

At 2:25 a.m., Officer Andy Stearns and his partner Officer Resch pulled up behind Stephens' car at the intersection of 24th Street and Osprey Avenue, seven blocks from the pawn shop. They noted that Stephens' car was a 1985 silver Toyota with a badly cracked windshield and no visible tag.   The automobile was registered to Lige Hood. When Stephens turned northbound on Osprey, Officer Stearns pulled him over.  Officer Stearns approached Stephens' vehicle on the driver's side, while Officer Resch approached on the

passenger side.[3]  Officer Joseph Snodgrass arrived at the scene and also approached on the passenger side.

The officers observed Stephens in the driver's seat, and there was no one else in the car.  They observed that the top portion of Stephens' left hand was freshly cut and bleeding.[4]  He was wearing a "sweatshirt type, hooded jacket, red in color."

While Officer Stearns informed Stephens why he had been stopped, Officer Snodgrass looked into the car and observed the butt-end of a handgun sticking out from under two CD players in the front passenger seat.  The CD players were not in boxes. Officer Snodgrass got Officer Stearns' attention across the top of the car and notified him of the weapon.  For the officers' safety, Stephens was removed from the vehicle and placed into custody.  The officers observed that there was also a gold watch on the passenger seat.  All four pieces of property (the gun, 2 CD players, and watch) had tags attached to them which Officer Stearns recognized to be "pawn-shop-type-tags."

Meanwhile at approximately 2:30 a.m., Deputy John Walsh of the Sarasota County Sheriff's Office was on patrol in the area when he heard an alarm.  He eventually determined that the alarm was sounding at the Suncoast Liquidators' pawn shop.  Upon his arrival there, he observed that the front glass door to the business had been smashed in. Fearing that the perpetrator might still be inside, Deputy Walsh waited for back-up officers to arrive.  Deputy Cox arrived, as well as a K-9 unit.  They proceeded into the pawn shop

---

[3]Officer Snodgrass testified that Officer Resch approached Stephens' vehicle on the driver's side with Officer Stearns.

[4]At trial Stephens attempted to minimize this injury by claiming that it was a "scratch" he had sustained several days earlier while playing basketball, and he had simply ripped the scab off just before being stopped by the police.

where they observed a large round concrete rock lying on the floor.  The rock appeared to have been used to smash the glass door.  There were sharp shards of glass lying on the ground outside the shop.  The shards had drops of fresh blood on them.

Back at the scene of Stephens' traffic stop, Officer Stearns contacted communications to determine if there had been any recent reports of pawn shop burglaries in the area.  He learned that there was a pawn shop burglary being investigated by the Sarasota Sheriff's Office.  Officer Stearns relayed the information regarding the four items recovered from Stephens' car.

Sheriff's Deputy Cox left Suncoast Liquidators and responded to the scene of the car stop.  The items from Stephens' car were turned over to him.

Stephens was eventually returned to the scene of the crime.  There Deputy Walsh noted that the tags on the items taken from Stephens' car appeared to be identical to the tags on the merchandise in the pawn shop.

At approximately 3:30 a.m., Detective Paul Richard arrived at the pawn shop. Deputy Cox showed Detective Richard the four items that had been recovered from Stephens' car.  Detective Richard identified the gun as one that had been obtained from Manatee County Sheriff's Office, and which had been a part of the stock of Suncoast Liquidators.  Detective Richard also examined the gold watch and the two CD players that had been recovered from Stephens' car, and recognized them to be items that had also previously been in the pawn shop. The items still contained the store tags, and Detective Richard recognized the handwriting on the tags as his own.  The fact that the tags were still on the items when they were recovered demonstrated they had not been bought, sold, or traded at the pawn shop.

Later that night, Deputy Walsh viewed the videotape of the burglary and determined that it was Stephens on the tape.

Upon Stephens' arrest, Officer Stearns attempted to photograph Stephens' cut and bloody hand, but Stephens refused to allow him to do so.

At the time of Stephens' trial, the law in Florida was that the giving of a jury instruction on a lesser offense was a matter of discretion for the trial judge.  The judge determined whether the charging document and evidence at trial would support the giving of the instruction the lesser offense as a lesser-included offense.  See State v. Espinosa, 686 So. 2d 1345, 1347 (Fla. 1996).

Stephens' defense at trial was, essentially, mistaken identity.  Stephens did not claim to be on the premises for innocent purposes, or without the intent to commit a crime.  In fact, Stephens claimed not to be on the premises at all, even though he was found in possession of the stolen items only minutes after the crime occurred.  Furthermore, the evidence showed a completed burglary.  The surveillance video, in particular, showed the perpetrator broke into the closed pawn shop by breaking the plate glass window with a block of concrete, and stole several items on display.  The intent to commit an offense in the structure was clear.  There was no evidence of a mere trespass.

Based on the foregoing, there is no way the failure to instruct the jury as to trespass calls into question the validity of the jury's verdict, let alone renders the entire trial fundamentally unfair as required in order for this Court to grant federal habeas relief.

## Ineffective Assistance of Appellate Counsel

By virtue of the Due Process Clause of the United States Constitution, a state criminal defendant is entitled to the effective assistance of counsel on direct appeal.  Evitts

v. Lucey, 469 U.S. 387 (1985).  The standard for effective assistance set forth in Strickland v. Washington, 466 U.S. 688 (1984) applies to appellate counsel as well as trial counsel. Matire v. Wainwright, 811 F. 2d 1430 (11th Cir. Ct. App. 1987).

As to the first Strickland prong, Stephens must establish that appellate counsel's performance was deficient in that the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance.  Chandler v. United States, 218 F. 3d 1305, 1312-13 (11th Cir. 2000), cert. denied, 531 U.S.1204 (2001).  As to the second Strickland prong, Stephens must show appellate counsel's deficiency compromised the appellate process to such a degree as to undermine the confidence in the correctness of the result. Id.; Wellington v. Unites States, 314 F. 3d 1256, 1260 (11th Cir. 2002).

If a legal issue "would in all probability have been found to be without merit" had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective.  Williamson v. Dugger, 651 So. 2d 84, 86 (Fla. 1994), cert. denied, 516 U.S. 850; Kokal v. Dugger, 718 So. 2d 138, 142 (Fla. 1998); Groover, 656 So. 2d at 425; Chandler v. Dugger, 634 So. 2d 1066, 1068 (Fla. 1994).

Based on the evidence adduced at trial, Stephens' defense at trial, and the law at the time of Stephens' trial regarding instructing as to lesser offenses, Stephens' assertion that the trial court erred in failing to give the instruction as to trespass is meritless. Therefore, appellate counsel cannot be deemed ineffective for not raising this meritless issue on direct appeal.

Ground three does not warrant habeas corpus relief.

Ground Four

Stephens alleges that the state trial court and the state district court of appeal violated his Fifth, Sixth, and Fourth Amendment rights by denying grounds one, two, three, four, seven, eight, and ten of his Rule 3.850 motion for post-conviction relief. Ground four has no merit.

As to ground one of his Rule 3.850 motion, Stephens argues that his trial counsel, Leann McCurry, was ineffective for allowing Deputy Walsh to identify Stephens as the person who was caught on the surveillance videotape while burglarizing the pawn shop. The state trial court conducted an evidentiary hearing on this issue, and later held that the witness's testimony related to, and was unavoidable fallout from, counsel's reasonable tactical choice to present a defense of misidentification. As the state trial court ruled, even if counsel's actions or omissions had been deficient, there was no prejudice to Stephens pursuant to the two-prong test established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In regard to counsel's trial strategy, the court stated in its order as follows:

> To develop her defense, Ms. McCurry felt she had to attack the witnesses for incompetent police work. At the same time, she had to assume the risk that a witness might answer in a way not helpful to the defense. Defense counsel most likely knew what Walsh was going to say in defense of the incompetent police work charge before she asked the question. From her perspective, there was no reason to object to Walsh's oblique reference on direct, since she knew she had to broach the subject on cross in any event.
>
> This is the type of risk-benefit analysis defense attorneys must make every day in trials. The attorney's choice was to abandon a line of questioning that might raise a reasonable doubt with some juries, or live with the fact that the witness might explain his alleged incompetence in a way that might

> further implicate her client as the perpetrator.  Counsel chose
> the latter, and in the face of the other identification evidence it
> was a reasonable decision to make.  In short, given the cards
> she was dealt, Stephen's trial counsel played the best hand
> possible.  She did not fall below the <u>Strickland</u> standard by
> employing a legitimate trial strategy, regardless of the result for
> her client.

(Apx. A, Ex. 7; Apx. B, Ex. 4, p. 554). The state trial court's holding was not unreasonable or contrary to established federal law, and was based on substantial competent evidence in the record.

As to the remaining Rule 3.850 grounds, Stephens argues that the state trial court abused its discretion in summarily denying grounds two, three, four, seven, eight, and ten of his Rule 3.850 motion.  The state trial court denied these claims without a hearing and attached relevant portions of the record showing that the claims were conclusively refuted.  Florida Rule of Criminal Procedure 3.850(d) provides, "If the motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion shall be denied without a hearing."

In ground two of his Rule 3.850 motion, Stephens alleged that he was denied the effective assistance of counsel by counsel's failure to investigate and depose a State witness, Detective Paul Richard, who testified that there was an inventory list that was kept from the pawnshop burglarized that matched the items found in the Stephens' possession.  Stephens contends that, although the state admitted to a late disclosure of the items at trial during a <u>Richardson</u> hearing, his attorney could have avoided the issue and used a different strategy if she had taken the witness's deposition and discovered the list.

Although counsel apparently was not aware of the inventory list prior to trial, her objection at trial was sustained and the witness made only a brief statement about the list

before the court ruled that the state would not be able to use the testimony about the list at trial. (Apx. A. Ex. 4). As a result, Stephens cannot show that he was prejudiced by counsel's alleged error because he cannot show that the result of the trial would have been different had counsel deposed Deputy Walsh.

In ground three of the Rule 3.850 motion, Stephens contends that he was denied the effective assistance of counsel by counsel's failure to use misidentification as a defense in view of the poor clarity and quality of the State's videotape evidence. Stephens points to a discrepancy in the color of the burglary suspect's shoes and the shoes he was wearing on the day he was arrested as well as a difference in the color of the sweatshirt he was wearing from the color in the image on the videotape.

The State argued that Stephens' claim should be denied because the videotape was in black and white and it was impossible to tell color in the videotape. Also, the State argued that Deputy Walsh testified that Stephens' sweatshirt was red and that Stephens never testified as to the color of his shoes. The state trial court agreed with the State, finding that counsel's failure to object to the discrepancy in the videotape and the color of his sweatshirt and shoes was not unreasonable in light of the black and white nature of the videotape and the fact that the witness testified that Stephens' sweatshirt was red. (Apx. A, Ex. 7; Apx. B, Ex. 4, pp. 489-90). Moreover, Stephens did not raise the issue of the color of his shoes in his own testimony. (Apx. B, Ex. 4, pp. 491-95).

In ground four of the Rule 3.850 motion, Stephens contends that he was denied the effective assistance of trial counsel by counsel's failure to present exculpatory evidence. In a corollary to ground three of the Rule 3.850 motion, Stephens argued that his attorney failed to present evidence of the color of Stephens' shoes when Stephens was arrested,

which Stephens contends was inconsistent with the color of the burglar's shoes as depicted on the videotape. Based on the reasons given by the state trial court judge for denying ground three, this claim is without merit.

In ground seven of the Rule 3.850 motion, Stephens argued that he was denied the effective assistance of counsel by counsel's failure to present exculpatory evidence. Stephens argues that because the State failed to present testimony from the true owner of the building that housed the pawnshop, his attorney should have introduced testimony from the owner to contradict the testimony of the State. This claim was properly denied by the state trial court for lack of merit. Accordingly, trial counsel's failure to call the owner of the building to testify did not constitute ineffective assistance of counsel.

In ground eight of his Rule 3.850 motion, Stephens alleges that he was denied the effective assistance of counsel by counsel's failure to object to prosecutorial misconduct in four instances during summation argument.

The first instance of alleged improper argument concerns the prosecutor's remark to the jury, "The person who is on that video, Gregory Stephens, obviously had the intent to steal as you see him stealing property from the store." (Apx. A, Ex. 19) . Stephens' argument is without merit because the prosecutor's argument was a fair comment on the evidence. See, Elam v. State, 389 So.2d 221 (Fla. 1980).

The second instance concerns the following argument by the prosecutor:

> And look what he's holding in his hands. He's holding a cloth. And in another photograph I want you to look at, he's holding a cloth in two hands to keep fingerprints off everything he's touching. You can see he's holding a cloth. You can see how the cloth is preventing his fingers from touching electronic equipment and anything else he was carrying. (Apx. A, Ex. 19).

Again, the state trial court properly found that the prosecutor was merely commenting on the evidence and was not impermissibly interjecting his personal opinion in the case.

The next instances involve a series of remarks by the prosecutor pointing out the similarity of the sweatshirt worn by Stephens at the time of his arrest to the shirt worn by the perpetrator in the videotape.  The state trial court found this was another example of a fair comment on the evidence as the prosecutor was allowed to suggest inferences that could be drawn from the evidence presented.  See Lara v. State, 528 So.2d 984, 985 (Fla. 3d DCA 1988)(holding failure to object to misstatement of facts is not ineffective assistance of counsel).

Finally, Stephens contends his counsel should have objected to the prosecutor's comment that the perpetrator caught on videotape is an African-American, rather than a white person.  (Apx. A, Ex. 19).  The state trial court found this was another example of the prosecutor drawing a permissible inference from the videotape that was admitted as evidence at the trial.  Moreover, the court held that, even if the comments were objectionable, Stephens would not be entitled to relief because the comments were not  so prejudicial as to require a new trial.  Accordingly, Stephens cannot show deficient performance or prejudice caused by trial counsel's decision not to object to the prosecutors' comments.

In ground ten of the Rule 3.850 motion, Stephens argued that his sentence was illegal because the Florida Supreme Court declared section 775.084(3)(a)6, Florida Statutes, illegal in State v. Thompson, 760 So. 2d 643 (Fla. 1999).  This argument has no merit.  Thompson does not apply to Stephens because Stephens was not sentenced as a

violent career criminal or habitual violent felony offender.  <u>See</u> <u>Thompson</u>, 760 So. 2d at 649.

Finally, Stephens' argument related to the denial of his motion for rehearing in case no. 2D02-2729 is without merit.  The denial of a motion for rehearing or clarification under Florida Rules of Appellate procedure is a matter of state law and is not subject to review in a federal habeas corpus petition.  Furthermore, Stephens did not allege any violation of the United States Constitution or other federal law in his motion for rehearing.  In fact, Stephens relied on a <u>Florida</u> Supreme Court case interpreting sentencing guidelines.

Ground four has no merit, in its entirety.

Accordingly, the Court orders:

That Stephens' petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Stephens and to close this case.

ORDERED at Tampa, Florida, on July 28, 2005.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Gregory Lamar Stephens